M’Girk, C. J.,
delivered the opinion of the Court.
This was an aetion of detinue brought by Sibly against Hood for three slaves. The plaintiff had judgment. The bill of exceptions shows that about the year 1821, Sibly entered into partnership with one Boggs, and one Bales,'-with a view to trade with the Osage Indians and others The terms of the partnership were, that Sibly was to furnish the capital and goods that were to go in trade. That he took on himself individually and agreed with the partners, that he would be individually responsible to the U. S. for the payment of the outfit of goods. It was further agreed that Boggs and Bales should carry on the trade with the Indians in person, and that *207 after the capital employed was remitted to Sibly, the profits were to be equally divided, and that if there happened a loss, it should be equally borne by all the partners. It further appears that accordingly the business of the trade was immediately gone into.
In the month of March, 1825, judgment was obtained against Sibly for about the sum of twelve thousand dollars, on three protested bills of exchange, two drawn by Sibly, and one by Bales and Co., in favor of the United States, and accepted by Sibly, which bills appear to have been given for the goods before mentioned, that between this time and March, 1828, Sibly paid the amount of said judgment.
That on the 11th of July, 1825, Boggs, by a bill of sale, sold to Sibly the throe negroes in question. The deed of sale refers to the partnership, and alleges that it had been a losing concern; and that there were considerable debts due by the firm, for which Sibly was personally responsible; and it being doubtful if the funds of the firm would be sufficient to pay the debts, and that Boggs being in good faith bound for his proportion of any loss said firm might sustain, and that he was actually indebted to the firm in a large sum, say one thousand dollars. With a view therefore to discharge his obligation to Sibly, as far as lie was able, he sold the slaves to him.
That the negroes were to remain in Boggs’ hands, he paying the taxes and finding clothing for them, until such time as it might be necessary to use them or anj- part of them for the payment of any debt that Sibly might be obliged to pay on account of the firm, or until Boggs should think proper, by future arrangements, to deliver them to Sibly.
The bill of sale then says, that A. Gamble was present, to whom the matter was fully explained. The bill purports to be made on the consideration of eight hundred dollars.
It was proved that Mr. Gamble told Sibly and Boggs it was necessary to record the bill of sale, and that Sibly said he did not wish to make it public on account of some expressions used in it, relating to the condition óf the firm, and requested that the making of it might be kept secret.
It was also proved that at the time of making the bill of sale,' Sibly was largely indebted to the U. S. for the goods used as the capital of the firm, and at that time there were judgments against him for a large amount, and that he paid these judgments afterwards.
It also appears that by the terms of the articles of co-partnership, the co-partnership was to continue until dissolved by mutual consent, or until the death of either of the co-partners. It does not appear whether the partnership did or did not exist at the time of making the bill of sale, nor does it appear that it is yet dissolved.
There is no evidence to show whether the firm was solvent or not. It is aliedged hy the bill of sale, that Boggs was largely indebted to the linn at the time he made it, perhaps to the amount of one thousand dollars. But Boggs says in his deposition the accounts of the firm are unsettled, and that he does not know whether, on settlement, he will owe the firm anything. And it docs not appear that he was indebted to Sibly in any amount.
It is proved that Boggs kept possession of the slaves until they were sold under an execution in favor of Hood. That in October, 1825, Hood obtained a judgment by confession, against Boggs, for a debt contracted with him several years before, for the sum of $800. That Hood took out an execution on the judgment, and on the *208 17th of February, 1826, caused the slaves to he sold, and became the purchaser of them for the sum of S826.
It is proved that Hood had no notice of the bill of sale to Sibly, and that Sibly, at the time of making the bill of sale, had notice of Hood’s debt.
It was further proved that at the time of the date of the bill of sale, Boggs was largely indebted to sundry other persons, to more than the amount of his effects.
Upon this slate of facts the parties went to trial before a jury. Whereupon the counsel for Sibly prayed the Court to instruct the jury:
First. That fraud is not to be presumed.
Second. That in order to constitute a sale fraudulent in fact, as against creditors, it must be made with intent on the part of the vendor to defraud, delay or hinder creditors.
Third. That although a conveyance is made with intent on the part of the vendor to defraud creditors; yet it is not void if it were taken on the part of the vendor bona fide and for a full and valuable consideration.
Fourth. That a debtor may lawfully prefer one creditor to another, (not having a lien,) in the payment of his debts, although in giving such preference he transfers all his property to one creditor, and leaves his other creditors wholly unpaid.
Fifth. That the jury are bound to find that the conveyance from Boggs to Sibly was bona fide and honest unless the contrary is shown from the proof.
Sixth. That the liability of Boggs to refund to Sibly his proportion of what Sibly might be compelled to pay out of his individual propertj' in satisfaction of the judgment against him in favor of the U. S., or to indemnify Sibly against Boggs’ proportion of that judgment, constitutes a valuable consideration of the deed for sale.
Seventh. That if Sibly, at or before the commencement of the suit was compelled to pay any part of the judgment in favor of the U. S., out of his individual property, he is entitled to the possession of the slaves according to the stipulations of the hill of sale.
Eighth. That Boggs continuing in possession after his sale to Sibly, does not, under the circumstances of this case, per se, constitute the conveyance fraudulent and void.
Ninth. That Boggs continuing in possession after his sale to Sibly, was consistent with the deed to Sibly.
Tenth. That Boggs continuing in possession after his sale to Sibly is, under the circumstances of this case, no evidence of fraud.
Eleventh. That if the purchase by Hood, under the judgment against Boggs, was construed between Hood and Boggs to defeat the sale to Sibly, Hood acquired no title to the slaves as against Sibly.
Twelfth. That Sibly, permitting Boggs to remain in possession of the slaves after his purchase, is no evidence to show that such purchase was fraudulent.
Thirteenth. That although Boggs was greatly indebted at the time of making the sale to Sibly, and in insolvent circumstances, and that fact was known to Sibly, yet the sale to Sibly is not therefore void, if Sibly’s purchase was for a valuable consideration, and honestly taken to secure himself, and not to defraud creditors.
The Court gave the instruction asked for except the 11th and 12th, which were refused, to the giving of which the defendant’s counsel excepted.
The defendant then prayed the Court to give the jury the following instructions : First. If the jury find from the evidence that there was no valuable consideration *209 passing from Boggs to Sibly for the sale of the negroes, then Sibly obtained no title to the slaves by the sale, against Boggs’ creditors. If they farther find that Hood was, at the time of the execution of the bill of sale, a creditor of Boggs’, and that he obtained judgment and execution for his debt against Boggs, and that the negroes were levied on and sold under his execution, and that Hood became purchaser, then Sibly obtained no title by his bill of sale as against Hood.
Second. If they find that the deed from Boggs to Sibly was executed secretly, and that Sibly requested that the same should be kept secret, and it was kept secret and mot recorded, and that Hood was a creditor at the time and purchase oí the negroes without knowledge of the existence of the deed to Sibly, and that Boggs remained in possession till the levy was made under Hood’s execution, and that Boggs exercised acts of ownership over the slaves, such as would naturally induce people generally to believe Boggs to be the owner, then the deed of sale cannot prevail against Hood.
Third. If they find that the deed from Boggs to Sibly was made secretly, and that Sibly requested that it might be kept secret, and that it was kept secret, and that Boggs was largely indebted at the time, it is evidence of fraud, as against creditors and subsequent purchasers.
Fourth. If they find that the possession of the negroes did not accompany or follow the deed, it is void against creditors.
Fifth, If they find that the transaction between Boggs and Sibly was secret and so remained, it is evidence of fraud as against creditors and purchasers.
Sixth instruction is the same as the fourth.
Seventh and eighth instructions asked were given.
Ninth. If the jury find that the deed from Boggs to Sibly was executed by Boggs for the purpose and with the intent to defraud his creditors, then such conveyance is void as against the creditors of Boggs, notwithstanding Sibly may not have participated in or been conusant of the intention of Boggs to defraud his creditors.
Tenth and eleventh instructions asked were given.
The Court refused to give the second, the fourth, sixth and ninth instructions, and gave the others.
The Court rejected some testimony on the part of the defendant, but rightly, because the matter to be proved was admitted on the record.
It is assigned for error that the Court gave the instructions for the plaintiff as above stated, and refused to give those asked for by the defendant.
The first instruction Complained of is, that fraud is not to be presumed, but must be proved.
It is true that fraud is not to be presumed without some evidence upon which a presumption can be raised. This instruction amounts to no more than a general direction to the jury, that they must have proof to enable them to find an affirmative matter in issue. This point is ruled for the appellee.
Second. There is no error on the second instruction given for the plaintiff, which assumes that to constitute a sale fraudulent in fact, it must be made with an intent to defraud, delay or hinder creditors. There are two kinds of fraud, one in law founded on facts without regard to the intention of the actors. This is called fraud in law. The other regards the intention, and is called fraud in fact. According to this definition, the instruction is right But this doctrine is only true as a Such akmnveyance would not be void for the fraudulent intent *210 of the vendor alone, when the transaction on the part of the vendor was bon a Juk and for a full and valuable consideration. Yet such conveyance might be void for other reasons, as the possession with the vendor, or other things forbidden by the policy of the law.
Third. The third instruction given is correct, subject to the restriction as above laid down with regard to the second instruction.
Fourth. The fourth instruction is correct, subject to the same rules as the two pre ceding.
Fifth. The fifth instruction is true, subject to the rule as laid down with regard to the first instruction.
Sixth. The sixth instruction given by the Court was, that the liability of Boggs to refund to Sibly his proportion of what Sibly might be compelled to pay out of his individual property, in satisfaction of the judgment against him in favor of the U. S. or to indemnify Sibly against Boggs’ proportion of that judgment, constitutes a valuable consideration for the deed of sale. The bill of sale alledges that the consideration was eight hundred dollars, which was disproved by the deposition of Boggs. The true and real consideration is, as explained afterwards by the deed itself, and supported by the testimony of Boggs, which explanation is, that the trade of the firm had been unprofitable, and that large debts existed against the firm, for which Sibly was personally responsible, and that it was unknown whether the funds of the firm would be sufficient or not to pay the debts, and that Boggs, wishing to secure 'Sibley against any final loss, made to him the bill of sale to secure Sibly against that loss if it should happen.
Our opinion is, that taking the whole of this instrument together, the true construetion is that the parlies intended to secure Sibly in the end against the consequences of an ultimate insolvency of the firm which was supposed to exist. But until this event does happen, it cannot be known whether the consideration of the bill of sale had any good foundation.
There is no evidence that the firm is in reality insolvent, and for any thing appearing on (he record, the firm may be solvent and may reimburse Sibly to the full extent.
It is not intended to be disputed, that a liability may form a good consideration for a mortgage of land or personal property, or that it may be a good consideration even for a sale of property ; but in every case where there is any condition annexed, the condition must happen before the consideration is complete; and in every case of the mortgage or sale of property to secure one against a liability, the rights of the public at large, and all the laws respecting fraud on purchasers and creditors must be attended to at the peril of the parties concerned.
This instruction would be correct enough if it were shown that the firm was insolvent ; but until that is shown the instruction cannot be given.
Seventh. The seventh instruction given for the plaintiff was, that if Sibly, at or before the commencement of this suit, was compelled to pay any part of the judgmest in favor of the U. S. out of his own property, he is entitled to the possession of the slaves according to the stipulations of the deed of sale.
The stipulations of the deed are, that Boggs may keep possession of the slaves till it shall be necessary to use them or a part of them for the payment of the debts which Sibly was bound to pay on account of the firm, or until by future arrangement, Boggs should give the possession to Sibly. The first part of this stipulation amounts to a power and authority, to Mr, Sibly, to take possession of the slaves whenever if *211 should be necessary for him to do so to pay the debts before mentioned. Whence this necessity was to arise, we cannot tell. The'necessity might have arisen from the insufficiency of the funds of the firm to help Sibly out, or it might have arisen from the deficiency of Sibly’s own funds. Let the necessity arise from whence it might, the power which Sibly might have exercised, has never been used. If the negroes had been sold by Sibly in pursuance of the power, before Hood acquired his right by levying his execution, we cannot doubt that the purchaser of the slaves under the power would have acquired a good right to the property. In this case the parties created a secret mortgage or sale resting on a contingent consideration which we cannot see has yet happened, and a power to be exercised on a contingency resting partly on the choice or will of the party most interested to exercise it, yet never exercised until this day: and after Hood has levied his execution, effected a sale of the slaves and become the purchaser without notice for a valuable consideration. The Circuit Court instruct the jury that Sibly has the right to the possession. Secret trusts and powers are not favored by, the law. They are not permitted to stand in the way of creditors and purchasers. The Circuit Court erred in giving the seventh instruction.
Eighth and tenth. We will consider the eighth and tenth instructions together, as they are in substance the same.
The eighth instruction for the plaintiff is, that Boggs continuing in possession after his sale to Sibly, does not, under the circumstances of this case, per se, make the deed fraudulent.
The tenth is. that Boggs continuing in possession as aforesaid, is, under the circumstances of this case, no evidence of fraud. Neither of these instructions ought to have been given.
For the Court to decide that under all the circumstances of the case, the thing is neither fraud per se, nor that there is any evidence of fraud, seems to us to determine the whole case, both facts arid law. The question of fraud or no fraud should have been left to the jury.
The possession by Boggs, with the other evidence in the matter relating to the possession, was at least some evidence of fraud, and should' be weighed by the jury. See 4 Cranch R. 71. The ninth instruction given by the Court is correct.
The thirteenth instruction which assumes that although Boggs was greatly indebted at the time he made the deed to Sibly, and in insolvent circumstances, and that fact was known to Sibly ; yet if Sibly purchased for a valuable consideration and honestly to secure himself, and not to defraud creditors, the deed is not therefore void.
This instruction is correct; if the deed is not void for other reasons, the reasons above mentioned will not make it void.
We will now consider the instructions asked for on the part of the defendant and refused by the Court.
The second instruction asked and refused was, that if the jury find the deed from Boggs to Sibly was executed secretly, and that Sibly requested the same should he kept secret, and it was kept secret and not recorded, and that Hood was a creditor at the time, and purchased the negroes without knowledge of the existence of the deed, and that Boggs remained in possession till the levy was made by Hood, and that Boggs exercised acts of ownership over them, such as would induce persons generally to believe Boggs to be the owner of them, the deed cannot prevail against Hood. This *212 instruction was entirely refused. We are of opinion that the substance of this instruction should have been given.
In the case of Hamilton v. Russell, 1 Cr. 309, there was an absolute bill of sale of property. The possession was left with the vendor, and his creditor was entitled to sell the property to pay his debt, on the ground that such a sale being absolute and unconditional, and yet the possession being left with the vendor, the transaction was fraudulent and void against creditors.
We believe the law is well laid down in that case. We have some decisions in this Slate on the same subject. In the case of Rocheblave d. Potter, 1 vol. Mo. JR. 561, it was decided by this Court that where a bill of sale was executed by A. to B., and the vendor was permitted to remain in possession of the slaves sold, and died in possession, and the executor of the vendor sold the slaves to a third person, the purchaser from the executor was entitled to hold the property against B., the vendee.
This decision was made on the broad ground that when the posession and title are severed, the possession gives the title to the purchaser who purchased under the faith that the title rested with the possession. In this case the bill of sale was absolute.
In a late case the same doctrine was again held by this Court, in Wallace v. Foster. In this case one Simmons was largely indebted. Among others he was indebted to Wallace. Simmons made a bill of sale of several slaves to Foster, who was his father-in-law, and some evidence to show that there was a valuable consideration from Foster for the slaves, was given. Simmons remained in possession till the time of his death. Foster then took possession of the slaves. Wallace sued him as executor.
The bill of sale was absolute on its face. This Court decided that the sale by Simmons to Foster was void, because the possession did not accompany and follow the deed, 2 vol. Mo. R. 231.
Many authorities have been cited on both sides of this question. Messrs. Hayden and Wells for Hood have cited the above cases, and rely on them, besides many others. We are of opinion that the second instruction asked should have been given with some qualification. We understand the law to be that when the owner of personal property sells it to a person either on a real or feigned consideration, and the property is nevertheless left in possession of the vendor, creditors of the vendor for a real bona fide consideration, are entitled to have the property sold to pay their debts 5 and of course the purchasers under their executions are to he protected. Here Hood was both purchaser and creditor. If Hood’s debt had been contrived between him and Boggs to defeat Sibly’s security, then, so far as he is concerned, he would not be entitled to any protection. But we do not mean to say that in that case purchasers of the property at Sheriff’s sale would not be entitled to protection, if such purcha-> sers were other persons than Hood himself.
As the case now stands on the record, we have no doubt that the bill of sale as to. Hood is entirely void, because made secretly with a view to be kept secret, and that it was kept secret, yet the possession remained with Boggs.
Mr. Leonard insists that this ease does not come within the case of Hamilton and Russell, and the cases of Rocheblave v. Potter, and Wallace v. Foster, because in all those cases the deeds of sale were absolute, and the possession of the property was inconsistent with the deeds. But in this case the deed of sale is conditional. To sustain this position 1 Pickering is cited 389; 2 Kent Com. 406. We readily admit *213 that there are cases where it has been holden by respectable Courts, that if possession of the property is consistent with the deed, the deed is not void notwithstanding the possession did not accompany the deed. We are of opinion that the circumstance that a bill of sale is conditional, and that the property remaind with the vendor in pursuance of that condition, does not save the transaction from being fraudulent as to creditors and purchasers. If it did, how easily the parties would provide for their safety in every case. The fact that the deed is conditional, in our opinion amounts to nothing, especially when both the deed and the condition were kept secret from the public and Hood.
Chancellor Kent seems to be of opinion, that some reason ought to exist, beyond the mere convenience of the parties, to justify the possession remaining with the vendor. We think so too; and that reason ought furthermore to be one which would enable the case to steer clear of conflicting with the public policy of the country.
. Considering this case merely in reference to Sibly and Boggs, the transaction is fair and honorable, and free from any legal objection; but when viewed in reference to the rights of bona fide creditors and purchasers, and especially purchasers without notice, and for a valuable consideration, we feel constrained to say, the judgment of the law is, that as to such creditors and purchasers the deed is fraudulent and void.
The Court refused to give the fourth and sixth instruction asked by the defendant: those two instructions were in substance the same, and as the law involved in them has been answered in the view given by us regarding the second instruction, we will say nothing more on them.
The ninth instruction asked by the defendant and refused by the Court, assumes that if Boggs’ intention' was to defeat his creditors by making the deed, it is void notwithstanding Sibly had no such intention on his part.
In the aspect in which we view this case, that instruction might well have been given. But if the second instruction asked had been given as understood by this Court it should have been, then this instruction would have been unnecessary. It is unnecessary now to say any thing farther on this point.
The judgment of the Circuit Court is reversed with costs, the cause is remanded for a new trial.