JOHN R. LIONBERGER, Respondent, *v.* JOHN BAKER ET AL., Appellants.

November 20, 1883.

1. JUDGMENTS — ASSIGNMENT OF. — The assignee, for value of a judgment has all the legal remedies for enforcing it which the original judgment creditor had.

2. —— ACTIONS — PARTIES TO. — The purchaser of a judgment who acquires, by sheriff's deed, land sold thereunder may maintain an action to se aside a fraudulent conveyance, by the judgment debtor, of the land, not withstanding the purchases were made with the money of, and in secret trust for, a third person.

3. FRAUDULENT CONVEYANCES. —A conveyance of property by a debtor who is in failing circumstances, to his daughter for one-fiftieth part of its value is fraudulent and void as to his existing creditors.

4. —— GIFTS — DEBTOR AND CREDITOR. — One whose property is so environed that his creditors can not enforce payment of their demands, can not make a voluntary conveyance which will be good as against his existing creditors.

5. —— That a debtor might, in time and by careful management, realize enough from his property to pay his debts does not place him in a position to make a donation which will be good as against his existing creditors.

6. HUSBAND AND WIFE — NOTICE. — The husband of a grantee in a voluntary conveyance of real estate who, before his marriage, had notice of a

proceeding to set aside the conveyance for fraud, is not a purchaser for value without notice, though there was an oral promise of marriage between him and the grantee, before notice.

Appeal from the St. Louis Circuit Court, Lindley, J. *Affirmed.*

W. H. Clopton, with whom is F. F. Espenchied, for the appellants : Lionberger was not the party in interest. — Rev. Stats., sect. 2462 ; *Williams* v. *Whitlock,* 14 Mo. 560 ; *Walhomfectel* v. *Dobyns,* 32 Mo. 310 ; *Hutchins* v. *Weems,* 35 Mo. 285 ; *Burt* v. *Flournoy,* 4 Mo. 116. In equity, a mere litigious right, the transfer of which would tend to encourage litigation and thus fall within the rule against maintenance, will not be recognized ; therefore, the mere right to file a bill in chancery on the ground of fraud, can not be assigned even in equity. — Bispham's Prin. of Eq., sect. 166 ; 2 Story's Eq. 1040 ; *DeHoughton* v. *Money,* L. R. 2 Ch. App. 169. In that case the court says : " I do not hesitate to say, that in my opinion, the right to complain of a fraud is not a marketable commodity, * * * such a transaction, if not in strictness amounting to maintenance, savors of it too much for this court to give its aid to enforce the agreement." — *Smith* v. *Harris,* 43 Mo. 557 ; *Wallen* v. *I. M. R. Co.,* 74 Mo. 522 ; *Milwaukee R. R.* v. *Milwaukee R. Co.,* 20 Wis. 183 ; *Prosser* v. *Edmonds,* 1 You. & Coll. 481–499 ; *French* v. *Shotwell,* 5 Johns. Ch. 566 ; *McMahon* v. *Allen,* 34 Barb. 56. If a valuable consideration was given, no matter how trivial, if the purchaser is free from fraudulent intent, the conveyance is good. — *Shultz* v. *Brown,* 27 Penn. 123 ; *Dygert* v. *Remershine,* 32 N. Y. 629–642 ; *s. c.,* 39 Barb. 417 ; *Seward* v. *Jackson,* 8 Cow. 430. A voluntary conveyance may become supported by a valuable consideration by matter *ex post facto ;* as if it be an inducement to a marriage subsequently contracted ; and it appears that if one marries a voluntary donee with knowledge of a voluntary gift or grant previously made, though

it was made without any view to marriage, the original donee or grantee becomes a purchaser, and the conveyance can not be disturbed. — *Story* v. *Arden*, 1 Johns. Ch. 261–271 ; on error, 12 Johns. Ch.. 536 ; *Wood* v. *Jackson*, 8 Wend. 33; *Huston* v. *Cantrell*, 11 Leigh, 137; *Bently* v. *Harris*, 2 Gratt. 357 ; *Brown* v. *Carter*, 5 Ves. 879.

JOHN D. DAVIS, for the respondent. The mere acceptance of the deed by the daughter, made her a party to the fraud her father was perpetrating against his creditors. — Bump on Fr. Conv. 229, 232, 238. Fraud presumed. — *King* v. *Moon*, 42 Mo. 551. It is not necessary that John Baker should have been insolvent in order to entitle plaintiff to a decree. — Bump on Fr. Conv. 293–294–296–299 ; *Potter* v. *McDowell*, 31 Mo. 62.

THOMPSON, J., delivered the opinion of the court.

The plaintiff purchased the interest of the defendant John Baker, in the property described in the petition, at an execution sale, and brings this suit in equity to set aside a conveyance of the same made by John Baker, to his daughter, Jessie G. L. Baker, prior to the sale. The plaintiff had a judgment in the circuit court in accordance with the prayer of the petition, and the defendants have appealed. We shall consider in their order the questions to which our attention is invited in the appellants' brief.

1. The first is that the plaintiff is not the real party in interest. It appears that the judgment under which the property was sold was recovered by the Fourth National Bank, of St. Louis, against the defendant John Baker ; that this judgment was afterward assigned to the plaintiff; that the property was bid in, at the execution sale, in the name of the plaintiff; that the amount of his bid was credited upon the execution ; that the sheriff's deed was made to him ; and that he still remains the owner of the legal title. But it also appears that the money, with which the judgment of the Fourth National Bank was purchased, was the money of

John D. Davis, Esq., who is not a party to this record, and
that the purchase was made ; the property bid in at the exe-
cution sale, and the sheriff's deed taken by the plaintiff, to
hold the property upon a secret trust for Mr. Davis.
Upon these facts, we are of opinion that the plaintiff is the
real party in interest, within the meaning of section 3462
of the Revised Statutes, and that the action is properly
brought in his name.    The secret trust or uses upon which
he holds the property are of no concern to the defendants.
The statute never was intended to prevent the holder of a
legal title to land from bringing actions touching the land in
his own name.

2. It is next urged that Mr. Davis, if he had sued in his
own name, could not maintain this action, because his pur-
chase of the judgment was the purchase of a mere litigious
right, which savors of maintenance, and which falls within
the rule that the right to complain of a fraud is not a mar-
ketable commodity.   This argument is not well founded.
Our statute (Rev. Stats., sects. 2762–2765), authorizes the
assignment of judgments, and gives the assignee any right
of action upon the judgment which the assignor would have
had.    This clearly gives him the right to take any pro-
ceedings under the execution issued upon such judgment,
or supplemental thereto, which the assignor might have
taken.   The statute makes a judgment a merchantable
property.   Any one may buy it who sees fit.   It is fre-
quently advantageous to those who have recovered judg-
ments that the law, by distinct expressions, sanctions the
right of sale of the same.   What the law allows one man to
sell, it allows another man to buy, and invests the pur-
chaser with all the legal remedies for the realization and
enjoyment of the particular property which it accords to
any other owner of the same species of property.

3. The next objection is that the court erred in admit-
ting evidence of any conversation with John Baker, by the
witness Simon, after the delivery of the deed to Jessie G.
L. Baker, and of facts transpiring after the making of the

deed to her. This objection can not be considered, because it was not brought to the attention of the court below in the motion for new trial.

4. The same may be said of the objection that the court erred in admitting the *alias* execution, levy, advertisement, and sheriff's deed. We may add, that while we overrule these two objections, in conformity with a well settled rule of proceedure in this state (*Bevin* v. *Powell*, 11 Mo. App. 216), yet, as this is a suit in equity in which we re-examine the case upon the evidence as chancellors, we shall endeavor to take care that our judgments are not influenced by incompetent evidence.

5. This brings us to the substantial merits of the case. The property in controversy consisted of an undivided one-thirty-sixth part of the estate of Jessé G. Lindell, deceased, which was subject to the life estate of Mrs. Jemima Lindell. The evidence fairly shows that this interest at the time of the conveyance which this suit is brought to set aside, was worth $14,000 or $15,000. It was conveyed on the 27th of July, 1878, by the defendant, John Baker, to his daughter, the defendant, Jessie G. L. Baker, now Antisdel, for the expressed consideration of $100. Without entering with much detail into the evidence as to Mr. Baker's financial condition at the time, we may say that we have carefully considered it, and that it leaves no doubt in our minds that he was greatly embarrassed and insolvent. He was indebted in the aggregate sum of $98,000, exclusive of interest, to various persons in various sums, which were secured by deeds of trust upon his real estate. These deeds of trust covered all the real estate which he owned, except that which is in controversy in this suit. He endeavored to raise money by deeds of trust upon this interest, but failed, in consequence of adverse opinions of eminent lawyers as to whether his interest was vested or contingent. He was, also, at the date of the deed to his daughter, embarrassed by an indebtedness of $12,000 as indorser for

his brother Robert upon notes which, at the time, had been protested for non-payment. His condition was such that in the three following months, August, September, and October, suits were instituted against him by three different banks for large sums upon commercial paper upon which he was liable. In the month of September, and within two months of the deed in question, sales took place under deeds of trust of four separate tracts of his property. Following these, at intervals, all of his real estate, except that in controversy, was successively sold under the deeds of trust by which it was incumbered, the amount realized in every case being less than the incumbrance. It is true that Mr. Pitzman and Mr. Lanham, two real estate experts, valued the property thus incumbered to the extent of $98,000, and testified that, with proper management and with time, it might be made to yield $156,000 ; and that it was worth that sum. We see no reason whatever to discredit this testimony, but it does not at all go to show that Mr. Baker, at the time of this deed to his daughter, was not greatly embarrassed and insolvent. A competent man, with means and with time, could have realized this sum out of this property, or could have made it available to produce such an income as could be produced in this city with good management out of property of the value of $156,000. But the evidence equally shows that Mr. Baker had not the means, nor would his creditors give him the time. He could no longer renew the loans upon the property, as he had done in former years. He could not pay the interest, and the taxes on some of the pieces were in arrears. He could raise nothing upon the uncertain interest which he conveyed to his daughter. In short, it is too clear for further discussion that, in a financial sense, he was literally going to pieces at the time this deed was made ; and though he testified that he did not realize his insolvency until the first of January, 1879, something over five months after this deed was made, yet we must take this testimony with all

the allowances, and subject to all the observations, which attach to the testimony of fairly credible persons under such trying circumstances; and so taking it, we are bound to consider that, though he may have indulged hopes until the beginning of the year 1879 of extricating himself from his difficulties, he must have realized the facts which actually stared him in the face, and must have felt strongly the force of those facts. What those facts were we have sufficiently indicated.

It is justly argued on behalf of these defendants that this deed, if it falls at all, must fall upon one of two theories: 1. That the conveyance was fraudulently concocted between father and daughter to place the property beyond the reach of the creditors; or (2) that it was a gift from the former to the latter, made under circumstances in which the law will not allow a debtor to give away his property. Upon the first branch of the question the daughter testifies that they lived in affluent circumstances during the year 1878, as they had always done previously; that they had plenty of money; that she supposed her father had plenty of money, and had no knowledge that he was in embarrassed circumstances. We see nothing in the record tending to contradict this, nor do the circumstances of the case suggest any reason to doubt it. The daughter was, at the time when the deed was executed and delivered to her, a young unmarried lady less than twenty years of age, sojourning temporarily with her mother at Oconomowoc, Wisconsin, a small watering-place. There is nothing improbable in the act of a father in concealing his financial embarrassments from a daughter of such tender years, who could not assist him with her counsel or her means, and to whom such a revelation would be a source of unhappiness. We, therefore, put out of the question the idea that this was a conveyance in which the daughter participated with the father in a design of hindering, delaying, or defrauding his creditors.

Then was it a gift?   The consideration of $100 was so out of proportion to what the testimony shows to have been the value of the property that, assuming it to have been actually paid out of money belonging to the daughter, it is difficult to look upon it in any other light than as a mere colorable consideration.   But the evidence as to its payment, I feel bound to say, has had some doubt cast upon it by the conflicting statements of father and daughter, as to the manner of its payment.   Both seem to realize the necessity of testifying upon this point in clear and positive terms, and the father says it was paid to him in a single $100 bill, and the daughter says it was paid in bills and silver.   Beyond this, the testimony of both tends to show that the daughter received the money from the mother, and the mother received it from the father in the way of pin-money which he allowed her.   It is true, that a strong effort is made by Mr. Baker, in his testimony, and the daughter corroborates him on this point, to make it clear that, some years before, he had agreed to allow his wife $2,000 a year, to do with as she pleased, but that he had fallen behind in payments of this allowance, or she, having received it at various times, had given it back to him, so at the time of the making of this deed, he owed her on this account some $700 or $800.   But however this may be, we feel bound, as triers of the fact, to take the evidence of this transaction in the light of ordinary experience and subject to all the imputations which such experience justifies, and accordingly to hold that this payment of $100, under the circumstances, was colorable, and that this conveyance was accordingly a gift.   It is not necessary to add that the law will not allow a gift made under such circumstances to stand as against a creditor, or against one to whom the law gives the rights of a creditor, whose debt was in existence, as this was, at the time when the gift was made.

6. Finally, the ingenuity of the learned counsel for the defendants has raised an objection which is quite curious,

but we think not substantial. After this deed had been made to Miss Baker by her father, and recorded, she became engaged to be married to the defendant James F. Antisdel, who, after his marriage with her, was joined with her as a defendant in this suit. Stating the case most strongly for the defendants, it appears that, at the time she and Mr. Antisdel became thus engaged, he knew that this property had been conveyed to her by her father, but did not know that the conveyance was subject to any infirmities growing out of the father's pecuniary embarrassments at the time, or that it was subject to any equities on the part of his creditors. But it also appears that he knew of the bringing of this suit two days, at least, before his marriage with Miss Baker was solemnized. He testifies that his knowledge of Miss Baker being the owner of this property was one of the inducements which led him to enter into this marriage engagement, but he does not testify that the knowledge that her title was defeasible by her father's creditors would have led him break off the engagement. In point of fact, notice of this suit was served on Mr. Baker and Miss Baker about a month before the marriage of the latter with Mr. Antisdel. Upon these facts, as we gather from the argument and brief of the defendant's counsel, we understand their position to be substantially this : That, a husband being in law entitled to the usufruct during coverture of his wife's real estate and the possession thereof, and marriage being a valuable consideration, in fact the highest consideration known to the law, Mr. Antisdel is to be deemed, in respect of the claim of this plaintiff, a *bona fide* purchaser, without notice, of the land in controversy, and that, such being the case, his equities are superior to those of the plaintiff' and the plaintiff's suit must fail. The cases cited in support of this view are not in point. They simply hold that a gift of realty is converted by a subsequent marriage into a purchase, so as to be good against a subsequent purchaser from

the donor without notice of the gift.    But the plaintiff does not stand in the position of a subsequent purchaser; he stands in that of a prior creditor whose judgment he has purchased.

But if the defendant Antisdel might, by reason of his intermarriage with Miss Baker, be regarded as a purchaser for value of her real estate, the inquiry would follow, upon this record. What is to be deemed the date of the purchase, the date of the marriage contract, or the date of the solemnization of the marriage?   It is essential to this novel defence that counsel should take the position that the date of the purchase should be deemed the date of the marriage contract, which was about six months before the date of the marriage solemnization.    But the infirmity of this position is, assuming it to be otherwise well taken, that the marriage contract is not shown to have been in writing; there is not shown to have been any marriage contract in the sense in which that term is used in the English books of equity.    But if it were otherwise, if there were in this case a marriage contract, good within the statute of frauds, ante-dating Mr. Antisdel's knowledge of any equities of this plaintiff, or any knowledge of any circumstances which should have put him upon inquiry, and if that contract could be deemed in law a purchase of the property in controversy, yet we do not see how it could be deemed both a purchase and a payment of the purchase-money; and it is well settled that in order to constitute a person a *bona fide* purchaser without notice within the meaning of the rule of equity, which the defendants here invoke, it is not sufficient for him to show that he had no notice at the time of his purchase, but he must also show that he had no notice at the time of the payment of the purchase-money.   *Wallace* v. *Wilson*, 30 Mo. 355.    The most that can be said in favor of this fantastic analogy, if there is anything in it at all, is that the marriage ceremony is to be deemed the payment of the purchase-money.   This being so, Mr. Antisdel,

upon his own testimony, had two days' notice of the plaintiff's equities prior to the payment of the purchase-money; and besides, he had been for a month before affected with notice through the doctrine of *lis pendens*. *Buford* v. *Packet Co.*, 3 Mo. App. 159.

On the whole, we see nothing substantial in the defences which have been set up against this action, and in the objections which have been made to the rulings of the circuit court. The judgment is accordingly affirmed. All the judges concur.