D. D. Burns et al., Appellants, *v.* H. Bangert et al., Respondents.

June 10, 1884.

1. Judgment — Assignment. — The assignee of a judgment takes the assignor's right to enforce the judgment by supplemental proceedings.

2. Equity — Infants — Parties. — Interests of minor children in property the sale of which is sought to be set aside as fraudulent, can not be affected by a decree in a suit to which they are not parties.

3. —— Practice. — If minor children are not necessary parties to an action on the plaintiff's theory of the case, his bill should not be dismissed because he has not made them parties.

4. —— HUSBAND AND WIFE — REDUCTION TO POSSESSION. — The fact that money which is the joint earnings, by labor on a farm, of a husband and wife and her children, is kept in her possession, does not rebut the presumption that the title thereto is in the husband.

5. —— Personal property so under the control of the husband that he may at any time take manual possession of it, is such a reduction to possession as gives him the title.

6. —— USES AND TRUSTS. — A husband who, by marriage, acquired the absosolute right to personal property in possession, can not, by mere loose talk, be made a trustee of the property for his wife's use.

APPEAL from the St. Louis County Circuit Court, EDWARDS, J.

*Reversed and judgment.*

L. S. METCALFE, JR., and FRANKLIN FERRISS, for the appellants : Evidence to create a resulting trust must be clear, strong, and unequivocal. Mere preponderance will not suffice. — *Ringo* v. *Richardson*, 53 Mo. 385 ; *Kennedy* v. *Kennedy*, 57 Mo. 73 ; *Thomas* v. *Chicago*, 55 Ill. 403. A husband by marriage acquires an absolute right to all the personal property in possession belonging to his wife at the time of the marriage or which comes to her afterwards, not given for her sole and separate use. — *Woodford* v. *Stephens*, 51 Mo. 443 ; *Kidwell* v. *Kirkpatrick*, 70 Mo. 216 ; *Terry* v. *Wilson*, 63 Mo. 499 ; *Bledsoe* v. *Simms*, 53 Mo. 308 ; *Bangert* v. *Bangert*, 13 Mo. App. 144 ; *Clark* v. *Nat. Bank*, 47 Mo. 17 ; *Dallenberg* v. *Wrisberg*, 10 Mo. App. 465. No resulting trust to a portion of land will arise in favor of any one who pays a part of the purchase-money, unless it be paid for some "aliquot" part of the land. — *Wheeler* v. *Kirtland*, 23 N. J. Eq. 13 ; *McGowan* v. *McGowan*, 14 Gray, 121 ; *Sayre* v. *Townsend*, 15 Wend. 647 ; *Olcott* v. *Bynum*, 17 Wall. 44.

W. H. CLOPTON for the respondents : An unauthorized arrangement by a husband will not deprive the wife of her property. — *Eystra* v. *Capelle*, 61 Mo. 578 ; *Godshall* v. *Ch. Nat. Bk.*, Ct. App. The wife can not be affected by estoppel. She did not know the deed was made to her

husband. — *Acton* v. *Lynch*, 14 Cent. L. J., No. 8 : Bigelow Estop. 486 ; *Murray* v. *Fox*, 11 Mo. 555 ; *Hall* v. *Callahan*, 66 Mo. 316 ; *Watson* v. *St. L. Sm. Co.*, 8 Mo. App. 604 ; *Suman* v. *Springate*, 67 Ind. 115. Plaintiff bought subject to the equities of the wife and children. He had full notice. — *Major* v. *Bulkley*, 51 Mo. 227. There is no proof that Henry Bangert reduced any of the money or notes belonging or due to his wife into possession. — *Tunnison* v. *Tunnison*, 46 Mo. 77 ; *Carr* v. *Carr*, 1 Md. 453. After 1875 he could not reduce her choses in action into possession without her consent in writing. — Rev. Stats. p. 560, sect. 3296. The products of the labor of the husband on the land of the wife, which is exempt from his debts, belong to the wife. — *Knapp* v. *Smith*, 27 N. Y. 280 ; *Feller* v. *Alden*, 23 Wis. 205 ; *Buckley* v. *Wells*, 33 N. Y. 520 ; *Gage* v. *Douchy*, 34 N. Y. 297 ; *McIntire* v. *Knowlton*, 6 Allen, 566 ; *Dean* v. *Barly*, 50 Ill. 484. There was evidence that plaintiff knew the property was bought with the money of Mrs. Bangert and her children. At any rate, the deeds were executed, etc., before judgment, and were on record before levy and sale. The sheriff's sale, therefore, could convey no title. — *Davis* v. *Ownby*, 14 Mo. 170 ; *Valentine* v. *Havener*, 20 Mo. 133 ; *Reed* v. *Ownby*, 44 Mo. 204 ; *Black* v. *Long*, 60 Mo. 181 ; *Mann* v. *Best*, 62 Mo. 491.

THOMPSON, J., delivered the opinion of the court.

This case was before the court on a former appeal (*Bangert* v. *Bangert*, 13 Mo. App. 144), and we are therefore relieved of the necessity of restating the facts at length. The petition contains two counts. In the first, the original plaintiff, John Bangert, in the character of a judgment creditor of Henry Bangert, and of purchaser at an execution sale under his judgment against Henry Bangert, of the right, title, and interest of Henry Bangert in certain described real estate, seeks to set aside certain alleged fraudulent

conveyances whereby the real estate had, shortly before the rendition of his judgment, been transferred by Henry Bangert through the defendant, William Benne, to the defendant, Herman Blum, as trustee for Charlotte Bangert, wife of Henry Bangert. The second count is in the nature of a petition in ejectment, whereby the original plaintiff, John Bangert, seeks to recover the same real estate in virtue of the title acquired by the sheriff's deed to him. After the cause was remanded by this court to the circuit court, John Bangert died, and thereupon the present plaintiffs, D. D. Burns and Lyne S. Metcalf, Jr., claiming as assignees of the original plaintiff, John Bangert, were substituted as parties plaintiff.

I. The first question raised upon this record relate to the right of these plaintiffs to maintain their action At the last hearing in the circuit court, it appeared that the original plaintiff, John Bangert, had, on the 30th day of March, 1880, which was after the institution of this suit, conveyed all the interest he had acquired in the premises in controversy, by a deed of special warranty, to the present plaintiffs, for the consideration of six hundred dollars ; that thereafter, on the 10th day of April, 1880, he had also assigned to the present plaintiffs the judgment upon which the execution under which the sheriff's sale to him had taken place, had been issued. It is now contended by the appellants that these substituted plaintiffs have no standing in a court of equity, because they are the purchasers of a bare right to complain of a fraud, which is not an assignable commodity. We have had this question before us in two recent cases, *Jones* v. *Babcock* (15 Mo. App. 149), and *Lionberger* v. *Baker* (14 Mo. App. 353). In the former case, we held that where the record title to land had been entirely divested out of a party by his conveyance of the land in trust, and by a trustee's sale and deed thereunder, such party could not thereafter, by giving a deed of warranty to a third person, pass to him such interest in the land as would enable him to maintain a suit in

equity to set aside the trustee's sale and deed on the ground of fraud. In the latter case we held that one who has recovered a judgment against another, being allowed by our statute to assign the same, the assignment of a judgment passes to the assignee whatever right in respect of the enforcement of the judgment by supplemental proceedings, the law gave the assignor. This case is governed by the latter, and not by the former of these decisions. Whether the deed by which John Bangert undertook to convey to the present plaintiffs the right, title, and interest in the land in controversy which he had acquired under the sheriff's deed was alone sufficient to pass to these plaintiffs such a title as would enable them to maintain this action, we need not consider; because the judgment upon which these proceedings had been founded was also transferred to them, and this passed to them in the fullest measure whatever rights John Bangert had against the present defendants. What those rights were we shall not now consider.

II. It was alleged and proved, that about two months before the recovery of the judgment by John Bangert against Henry Bangert, the latter transferred the land in controversy to the defendant, Benne, by deed of warranty, and that Benne thereafter, by a like deed, transferred it to the defendant Blum as trustee for the defendant Charlotte Bangert, who was then the wife of Henry Bangert. It also appeared that no consideration passed to Henry Bangert for these transfers. Benne, the intermediary, did not know why he had taken and given the deed; he simply knew that he had paid no money; he stood before the court in the attitude of a mere dummy, in a transaction where a man, knowing that judgment was about to be recovered against him, evidently thought it necessary to resort to this circuity in order to give the transaction the appearance of honesty. It is not claimed by these defendants that these conveyances were founded upon any consideration passing between the parties to them at the time;

but they allege in their answer, by way of special defence, that, on the 19th day of January, 1876, the date when Henry Bangert acquired title to the land in controversy, he was, and for a long time prior thereto had been the curator of Caroline Tieman, Fredricke Tieman, Emelia Tieman and Henry Tieman, minor children of the defendant Charlotte Bangert, by her first husband; that, as such curator, he had in his charge and control money belonging to them; that the father of these children and first husband of the defendant Charlotte Bangert, died in 1871, leaving a will by which the defendant, Charlotte Bangert, became entitled to and possessed of a valuable real property in the county of St. Louis, Missouri, the rents, issues, and profits of which were large; that the defendant Henry Bangert, acting as the agent of Charlotte Bangert, and as curator of said minor children, purchased said property, paying therefor the sum of $5,600; that said purchase-money was made up of the sum of $1,600 belonging to said minor children jointly, then held and controlled by said Henry Bangert as their curator, and of the further sum of $4,000 belonging to the defendant Charlotte Bangert, being the rents, issues and profits of the real estate belonging to her, which she had acquired by devise from her first husband; that the deed of January 19, 1876, by William Frenz to the defendant Henry Bangert, by which the latter had first acquired title to the land in controversy, was made to Henry Bangert for convenience only; that he never was the beneficial owner of the property; but that, at the time of the delivery of said deed to him, he was merely the trustee, holding the legal title for the defendant Charlotte Bangert's use and benefit, to the extent of her aforesaid interest in the purchase-money paid by her, and for the use and benefit of the said minor children, to the extent of their aforesaid interest in the purchase-money paid therefor; that the transfers which this suit seeks to set aside as fraudulent were not fraudulent, but were made to carry out and more fully declare the aforesaid trusts; and that at the time of

the sheriff's sale to John Bangert, Henry Bangert had n\(^{o}\) interest in the land which was subject to execution and sale. A reply put this new matter in issue.

When we remanded this cause on the former appeal, we suggested, that in order that there might be a settlement of the rights of all the parties, the children of Henry Tieman, deceased, whose money, according to the foregoing answer, was in part used to purchase the land, ought to be made parties to the suit. This, however, was not done. The circuit court seemed to think that, somehow or other, the plaintiffs were under obligations to have it done; for, after the cause had been heard and taken under advisement, according to the recitals of the bill of exceptions, " the court announced to the parties that it was unable to arrive at a satisfactory conclusion in the case, on account of insufficiency and vagueness of the testimony as to the rights of the parties in the property, and on account of defect of parties. Whereupon the plaintiffs asked leave, and moved the court to allow them to amend their petition, and make the children of Charlotte Bangert by her former husband, Tieman, parties, and to set down the cause for further hearing on the amended petition; which request and motion of the plaintiffs were by the court denied, to which action of the court the plaintiffs then and there excepted. Whereupon, on the —— day of November, 1883, the court rendered a decree dismissing the bill." We can not account for this ruling upon any other theory than that the court must have been of opinion that the plaintiffs were under an obligation to make these minor children parties to the suit; that not having done this before going to the hearing, they were not entitled to do it after the cause had been submitted; and that because they had not done so their suit must be dismissed. This view was entirely erroneous. The plaintiffs were under no obligation to make the minor children parties. They sought no relief against them. The claim that the minor children had an interest in the land

which the plaintiffs were seeking to recover was not a claim made by the plaintiffs, but it was a claim contested by them. It was a claim set up by the defendants as affirmative matter of defence. The plaintiffs were seeking to have whatever title Henry Bangert had in the property divested out of him and vested in them; and a decree giving to them the relief which they claimed would have no effect whatever upon the rights of the minor children. If the mother of such children, and their step-father and curator, who were defendants to the action, had not sufficient interest in protecting their rights to have them made parties, the plaintiffs were, certainly, under no obligation to see that it was done. Moreover, it appears that one of these minor children, Caroline Tieman, had become of age prior to the last hearing in the circuit court, and she was quite at liberty, under our former ruling, to come in and ask to be made a party to the suit, in order to assert any equitable interest which she may have had in the land in controversy.

Under these circumstances, the fact that the children were not made parties we regard as a strong circumstance against the special defence set up in the amended answer. For this ruling alone it would be our duty to reverse the judgment and remand the cause; but as the case has been heard a second time in the circuit court with no better result, so far as the rights of the parties are concerned, than before, we think it our duty to take the evidence and deal with it as chancellors, and end the controversy by a decree in this court.

III. It is perceived that the first count of the petition, to the issue made upon which the proof is directed, is in the nature of a bill in equity to set aside an alleged fraudulent conveyance made by a husband, through a third party, to a trustee to hold the title for his wife. It is also perceived that the defence is that this land was originally purchased by the husband with money belonging to the wife and with other money belonging to the four minor children of the

wife, of whom he was curator; that instead of having the deed of conveyance made to the wife and children who had thus furnished the purchase-money, he had it made to himself; that he held the title in his own name for some three years, when, on the eve of John Bangert's judgment being rendered against him he conveyed it, through a third party, to a trustee, not for his wife and children according to their respective interests therein, but to a trustee to hold it for the sole and separate use of the wife; and that these conveyances were made to carry out and more fully declare the trusts upon which he thus held the land.

The issue thus tendered is thus seen to have been whether the defendant Henry Bangert held the land in controversy as trustee of a resulting trust in favor of his wife and her children, and whether he made the conveyance for the purpose of declaring and executing such trust.

In order to establish a resulting trust by parol evidence the evidence must be of the most cogent and undoubted character, such as to satisfy the mind of the chancellor beyond a reasonable doubt. *Johnson* v. *Quarles*, 46 Mo. 423; *Ringo* v. *Richardson*, 53 Mo. 385; *Kennedy* v. *Kennedy*, 57 Mo. 73. If this rule were not rigidly adhered to, there would be no security for land titles; for in every case of this kind the establishment of a resulting trust means the establishment of title contrary to what has been written, signed, sealed, and recorded in a deed. But whilst this stringent rule is to be upheld in every suit in equity where it is sought by parol evidence to establish such a trust contrary to the terms of a title deed, yet we are not aware that it has been declared necessary in a case like the present, where the trust, if it existed, is claimed to have been executed by the trustee, and where the deed or deeds by which he claims to have executed it are assailed as fraudulent conveyances by his creditors. But even in these cases the rule is no doubt strong; for, as was said by McGirk, C. J.: "Secret trusts and powers are not favored by the

law; they are not permitted to stand in the way of creditors and purchasers." *Sibly* v. *Hood*, 3 Mo. 290, 298. Where a debtor makes such a conveyance on the eve of a judgment being recovered against him, the effect of which is to deprive his creditor of the fruits of his judgment, he ought to make it appear by clear and satisfactory evidence, that he made it in the execution of a trust binding upon him in law, or in the discharge of an obligation binding upon his conscience, the performance of which, although to the prejudice of his creditors, the law will uphold.

Turning to the facts of this case, it will appear that it is necessary, in order to support the special defence set up in the answer, to adopt one of two theories: (1.) That the conveyances which are assailed were made by the defendant Henry Bangert, to declare and establish a resulting trust in favor of his wife Charlotte Bangert and her four children, with whose money this land had been purchased; or (2) that, having used the money of the wife and children in purchasing the land for himself, and being indebted to them therefor, he made the conveyance for the purpose of preferring them as creditors.

1. We do not think that the first of these claims has been made out by that satisfactory evidence which the rule above stated requires. It can not escape attention at the outset, that, so far as the defendant Henry Bangert is concerned, the defence which he has set up involves the confession of a breach of trust on his part, as curator of the estates of the four minor children of his wife. Whether he could, without the sanction of the probate court, invest their money in land at all, need not be considered. That he could not lay hold of it *en masse*, mingle it together, mix it with money belonging to his wife, buy a farm with the aggregate sum, and take title in his own name without a recorded declaration of trust in favor of those who furnished the purchase-money is a question which can not be debated. Neither can it escape attention that the deed by

which it is now claimed that he intended to declare and establish this resulting trust in favor of his wife and her children, is not aptly framed for such purpose. It contains not a word expressive of such a purpose. It says nothing about Henry Bangert having bought the land with the money of his wife and her children, or with money belonging to either of them. It vests the property in a trustee to the sale and separate use, not of the wife and children in certain proportions according to their respective interests, but to the sole and separate use of the wife alone. It is alleged in the answer that the land cost $5,600 ; that of this sum the wife furnished $4,000, and that the balance was made up of $1,600 which he held as curator of the four children of the wife. But how much of the $1,600 belonged to each child is not alleged. The evidence at the last hearing attempted to prove even more than this answer set up. Mrs. Bangert testified that he not only used $1,600 belonging to the children, but that he used $2,400, which was substantially all the money which he held as curator for the children. This was not only a contradiction in part of what the defendants alleged in their answer, but it contradicted what Henry Bangert had sworn to at the former trial. Mrs. Bangert explains this discrepancy by saying that Mr. Bangert was mistaken in his former testimony. Henry Bangert himself was not put upon the witness-stand at all at the last trial, and consequently, we have not the benefit of his explanation of this discrepancy. The parties thus assume the attitude before the court of taking inconsistent positions — of alleging one thing and attempting to prove another thing, and of proving one thing at one trial and another thing at the next trial. Then, as to the real facts attending the acquisition of this purchase-money, the sole testimony at the hearing was that of Mrs. Bangert. Henry Bangert, the actor in the transactions, who must have known more about it than any one else, did not testify at all. It appears that Henry Bangert transacted the business for his

wife, and that she had little or no accurate knowledge about the matters in controversy. Probably she had as much knowledge as a wife generally has of business which is attended to by her husband, and that is just what he may choose to tell her. Now, Mrs. Bangert tells her story something like this: That, in order to get together the money to purchase this farm, her husband drew out of the Bremen Bank of St. Louis, $3,000, on a note or notes — that is the way she states it. Of this $3,000, $2,400 was " administration money," that is, money which Henry Bangert had held as administrator of Mrs. Bangert's deceased husband, Henry Tieman, and which he then held as curator of the four children, holding for each the proportion fixed by Henry Tieman in his will. The other $600 belonged to her, Mrs. Bangert. The remaining $2,600 was also money belonging to Mrs. Bangert, which she kept in the house. No check was produced on which this $3,000 had been drawn from the bank. No record of the bank was offered to show such a transaction — no evidence at all except the evidence of Mrs. Bangert, and she admitted that she knew nothing about it except what her husband told her. How she got this $600 she explains in this way : " A neighbor of mine sold wheat for me and put that money in bank with the money Rieman had put in previously." She thinks the name of this neighbor was Penningroff. The balance of the $5,600, which went to make up the price of the land was, according to Mrs. Bangert's testimony, kept in the house. It appears that this sum must have been $2,600 — a very large sum for a farmer's wife to keep in her house in the country ; Mrs. Bangert could not tell how much the sum she thus kept in the house was, or how long it had been there. One thousand dollars of it had been there a long time. She had made up the balance by selling hay and corn. She could not tell how long the $1,000 had been there. It was so long that she could not remember ; but she finally said it was the year after Tieman died. The bal-

ance was made on the farm, by which she meant the Col-
umbia bottom farm, which was a farm of eighty-seven acres
in cultivation. This farm had been devised by Henry Tie-
man to his wife for a period of twenty years from the date
of his will, after which it was to be distributed equally
among his wife and children. She claims in her testimony
to have managed the farm and to have worked on it the
year round like a field hand. Mr. Bangert and the chil-
dren also worked upon it, but her testimony puts Bangert
down to the mere rank of a field hand. When it came to
earning the money on the wife's farm the wife was mana-
ger. "I had charge of it and control of it; I was control-
ling the place at the time, and after I married him." But
while she managed the farm and her husband worked for her
as a field hand, it seems that he managed the money, and
succeeded in investing it in a farm in his own name, hold-
ing title to it in that way for three years without her know-
ing anything about how the title was vested. Mrs. Bangert
testifies that ever since the death of her former husband
until the purchase of the farm in controversy, she had kept
the money which was produced from her farm. "I have
always kept it; I have always taken care of it." When
Henry Bangert married her he had only eighty dollars, and
that he spent at the wedding. He had no property. One
child had been born of her marriage with Henry Bangert.
All the children of her first husband had lived with her
since her first husband died. She never gave Henry
Bangert any writing authorizing him to buy any farm.
"Whenever he has sold anything he has turned it over to
me always."

If we give full effect to this testimony, it will appear
that, of the $5,650, which appears to have been the pur-
chase-price of the Frenz farm, $2,650 were given by Mrs.
Bangert to Henry Bangert, out of moneys which she had
kept in the house, the same being accumulations of sales of
produce of the Columbia bottom farm, on which her former

husband died, and on which she has ever since lived both before and after her marriage with her present husband, Henry Bangert. It will also appear that of this $2,650, $1,000 was the result of accumulations by Mrs. Bangert from sales of produce of the farm during her widowhood, and that the remaining $1,650 was money which had accumulated from sales of produce of the same farm during the period of about three years which intervened between her marriage with Henry Bangert, and the purchase of the Frenz farm. Whether it can be inferred from this testimony that any money of Henry Bangert went into the purchase of the Frenz farm depends upon the question who was the legal owner of this $1,650. There is no evidence of any separate ownership of this money by Mrs. Bangert, other than the fact that she always had it in her personal custody at the house, and that it was the proceeds of a farm in which an estate for twenty years had been vested in her by her former husband.

The general rule is that possession of personal property is *prima facie* evidence of its ownership; but this rule seems to have no just application where the question of ownership arises between husband and wife, because the possession of their personal property is necessarily in a large measure a joint possession. The general rule must be held to be, that whether the possession be physically in the husband, or in the wife, the title is presumptively in the husband.

The act of 1875 (Rev. Stats., sect. 3296), does not seem to have changed this rule in its application to such a case as that before us. Of course the rule must, since the passage of this act, give way in many cases to special circumstances which may attend the possession.

If a wife were carrying on business in her own name as a *feme sole trader*, — her name on a sign above her place of business, her money deposited in bank in her own name, and in her own name checked out by her, — these circum-

stances, it is supposed would rebut this presumption.   But
the mere fact that husband and wife are living together
on a farm and accumulating money by the joint earnings
of themselves, of the minor children of the wife and of
hired men, and that the moneys so accumulated are kept
at home by the wife, do not seem to be sufficient to rebut
this presumption.

This, we think, would be so, even under the act of 1875.
But it seems that Henry Bangert intermarried with the
widow Tieman in 1873, and therefore the question is to be
decided with reference to the law as it then stood.   The
law as it then stood has been expounded in two cases in our
supreme court.   These decisions, overruling the contrary
*dictum* in *Tennison* v. *Tennison* (46 Mo. 77), hold, in the
language of Adams, J., as follows : " The husband, by mar-
riage, acquires an absolute right to all the personal property
in possession belonging to his wife, and that all subsequent
acquisitions by his wife of *choses* in possession, vest abso-
lutely in him unless such acquisitions be given or transferred
to her or to him for her sole and separate use.   Where
a husband, by means of the marriage, acquires the abso-
lute right to personal property in possession, he can not
be declared a trustee for his wife by loose and general
remarks made in conversations.   To establish such a trust
against the husband, the authorities are united that the
evidence must be clear and unequivocal."   *Woodford* v.
*Stephens*, 51 Mo. 443, 447 ; *Kidwell* v. *Kirkpatrick*, 70
Mo. 214.

In an earlier case, where the same question was under
consideration, it was said by Scott, J.: " Nothing is
clearer at law than that the wife can not be the recipient
of a gift from the husband so as to vest in her a legal title
to the subject-matter of the gift.   Their unity prevents
it.   The personal property of the wife at law belonging
to the husband, so soon as a gift is made to the wife, the

gift becomes the property of the husband. Courts of equity, however, where the intention of the husband is plain that his wife should have to her separate use a portion of his estate, and *when the rights of creditors are not in the way*, will raise in him a trust, when no third person is interposed as trustee, and will compel him, for the benefit of his wife, to execute the trust with which the property may have been clothed." In the case from which this is quoted,the husband was in possession of personal property bequeathed to his wife by a former husband, as administrator of such former husband. He made a final settlement, and it was ordered by the court that he and his wife should retain all the proceeds of the estate of the deceased in their hands. It was held that the possession of the husband, as administrator, ceased, and that his possession, *jure mariti*, commenced at the date of this order. *Walker* v. *Walker*, 25 Mo. 367, 375.

In another part of the same opinion the learned judge uses the following language: "In contemplation of law, property is reduced into possession when it is in such a state that the husband can lawfully take it into his hands if he will. It is not necessary that he should have actually taken it into his custody. If he has a right to do so at his will, it is enough. When no suit at law or equity is necessary to obtain possession of personal property, and the husband may, if he will, take actual possession of it, but fails or neglects to do so, the property is not the less reduced into his possession. The objection that the property was not reduced into possession must rest either in the idea that it was in the possession of the wife, or that it was held by the husband as administrator. Both of these grounds are untenable. If the property was in the possession of the wife, then the possession of the wife was the possession of the husband." *Ibid.* 376. Applying these principles

to the facts of this case, the conclusion is unavoidable that all of that portion of the money which was used by Henry Bangert in the purchase of this farm, amounting to the sum of $4,000, which the defendants claim in their answer was the money of Mrs. Bangert, is to be deemed to have been the money of the defendant Bangert. When he married the widow Tieman, and went to live with her on the Columbia bottom farm, he is deemed in law to have entered into possession of her estate for years in the farm under the deceased husband's will, which was a chattel interest, and also of all chattels upon the farm belonging to her. There is no evidence whatever of any agreement at that time, or of any purpose on his part to hold these chattel interests as her trustee, or in any other than his own right as her husband, under the law as it then stood. The $1,000 which she claims to have owned, became his, *jure mariti*, under the decision above quoted from twenty-fifth Missouri. Although it may not have been taken into his physical custody — though Mrs. Bangert may have kept it in the cellar in an oyster can, as she testified at the former trial, — yet, as he had a right to reduce it into his possession at will, that was enough. He and she were one in law, and her possession was his possession. In addition to this, his entire course of dealing with Mrs. Bangert's money and personal property, as disclosed by her own testimony, not only fails wholly to indicate a purpose on his part to hold it as her trustee, but indicates a purpose to hold it in his own right, as he might lawfully do. Whenever he wanted money that was kept in the house he went and took it. The money that was kept in the Bremen Bank seems to have been kept there in his name. He went and drew it when he wanted it, and when he purchased this farm, instead of taking title in the name of his wife, he took title in his own name, just as any other man would do in dealing with money which

he regarded as his own. If a trust could be raised in favor of the wife upon this sort of testimony, there is no case in which the joint possession by husband and wife might not be regarded either as the possession of the husband or of the wife, accordingly as it would be most convenient to regard it for the purpose of cheating the creditors of the one or the other.

There is, therefore, no difficulty in saying that so far as the defence set up in the answer that $4,000 of the pur-chase-money of the Frenz farm belonged to the wife in her own right is concerned, the defence has not been made out.

Then, as to the case of the children, it is sufficient to say that they have not been made parties, and that the decree which will be entered will not prejudice them in the future assertion of any right which they may have in the premises. As we have observed, neither their mother nor their step-father and curator has thought it right to bring them forward as parties. Caroline, who was of age, did not ask to be made a party. Henry Bangert, who of all others knew most about these transactions, delivered a mass of contra-dictory testimony upon the former hearing, but said not one word upon the present hearing. If he had come forward on the present hearing and testified as he did at the former hearing, he would have delivered testimony in direct con-flict with his sworn statements made as administrator *de bonis non* of Tieman's estate, and as curator of these chil-dren; for the evidence shows that he purchased the Frenz farm for cash on the 19th of March, 1876, and that, subse-quent to that time, namely, on the 19th of January, and again on the 27th of March, 1877, he filed two settlements as such administrator, under oath, charging himself with the full amount of assets which had come into his hands, stating that the same consisted of cash; and that at divers subsequent periods, he filed sworn settlements as curator of the four minor children, charging himself with the full

amount of the distributive share of each one in the deceased father's estate, stating that the same was "loaned out," and it was not until his second annual settlement as such curator, namely, in the year 1881, after this suit had been brought, that he gives in these settlements any intimation of having invested any of the money of the children in hand ; and then the only intimation of this fact which he conveys is in the following language : In his second annual settlement as curator of Fredericke Tieman, filed on the 14th of June, 1881, he states, after charging himself with this ward's portion of the estate and interest from the last settlement: "Part of the above is inventoried in real estate held in trust for said minor and part loaned out." In his second settlement with Emelia Tieman, filed on the same day he states: "This money is also invested in real estate partly, and partly loaned, thinking that the best use to put it to." In his settlement with Henry Tieman, filed on the same day, there is this statement: "This curator reports that this money has been invested in real estate, and is held in trust for Henry Tieman." In his final settlement with Caroline Tieman (who had come of age), filed on the following day, there is no such statement ; but Caroline purports to waive notice and all other requisites to a final settlement prescribed by section 2610 of the Revised Statutes.

It is quite clear that this evidence is not of that satisfactory character which is required to establish a trust in land in favor of the wife of a debtor as against the rights of his creditors.

2. Whether this evidence is sufficient to uphold the conveyances sought to be set aside, as having been made to prefer certain creditors need not, perhaps, be considered, because this is not the claim made in the answer. Besides, we have seen that as to the wife there is no satisfactory evidence that she was a creditor; and we do not pass upon the rights of the children, they not being before the court.

It follows that the plaintiffs are entitled to have these deeds set aside, and to have the legal title of Henry Bangert, as it stood in him prior to the making of these deeds, vested in them. The legal title carries with it the right to possession, and they are accordingly entitled to be put in possession under the second count in their petition.

It appears by the testimony of Mrs. Bangert that the annual rental value of the land is $225. They are entitled to a judgment against Henry Bangert and wife for mesne profits based upon the annual rental value from the date of the commencement of this suit.

A decree will be entered in this court accordingly. This decree will have no effect upon any rights which the minor children of Mrs. Bangert may have in respect of the land in controversy as they have not been made parties to the suit. It will, however, conclude the rights of Mrs. Bangert. It is ordered accordingly. All the judges concur.