John Bangert, Plaintiff, Appellant, v. Henry Bangert et al., Defendants, Appellants.

January 16, 1883.

1. Husband and Wife. —A husband who purchases land with his wife's personalty, without her consent, holds it as her trustee.

2. —— Conveyances between — Estoppel. —A husband who buys land with his wife's money may subsequently convey it to her, though he does it to keep the land from his creditors, in the absence of any question of estoppel.

3. —— There can be no estoppel in such a case where the creditor who attacks the deed sues on a debt contracted before the debtor had any interest in his wife's property.

4. —— Section 3295 of the Revised Statutes does not restrain the husband from reducing to possession his wife's choses in action.

5. GUARDIAN AND WARD.—A guardian who uses his ward's money for the purchase of land acquires no beneficial interest therein.

6. JUDGMENTS AFFECTING MINOR'S INTERESTS. —A decree affecting the rights of minors not made parties to the suit will be reversed.

APPEAL from St. Louis County Circuit Court, EDWARDS, J. *Reversed and remanded.*

L. S. METCALFE, JR., and FRANKLIN FERRISS, for the plaintiff: A voluntary deed is fraudulent and void as to existing creditors, when made with intent to hinder, delay, or defraud such creditors. — Bump on Fr. Conv. 281; *Potter* v. *McDowell*, 31 Mo. 62. Evidence to create a resulting trust must be clear, strong, and unequivocal, and such as to leave no room for reasonable doubt. A mere preponderance of evidence will not do. — *Ringo* v. *Richardson*, 53 Mo. 385; *Kennedy* v. *Kennedy*, 57 Mo. 73; *Thomas* v. *Chicago*, 55 Ill. 403. A husband by marriage acquires an absolute right to all the personal property in possession belonging to his wife at the time of the marriage, or which comes to her afterwards, not given for her sole and separate use.— *Woodford* v. *Stephens*, 51 Mo. 443; *Kidwell* v. *Kirkpatrick*, 70 Mo. 216; *Thomas* v. *Chicago*, 55 Ill. 403; *Terry* v. *Wilson*, 63 Mo. 499; *Bledsoe* v. *Simms*, 53 Mo. 308. Land bought by a husband in his own name with his wife's money, but without any agreement that the purchase shall be for her sole and separate use, or that the title shall be taken in her name, will not be treated in equity as her property. — *Kidwell* v. *Kirkpatrick*, 70 Mo. 215; *Thomas* v. *Chicago*, 55 Ill. 403. No resulting trust to a portion of land will arise in favor of any one who pays a part of the purchase-money, unless it be paid for some " aliquot " part of the land. — *Wheeler* v. *Kirtland*, 23 N. J. Eq. 13; *McGowan* v. *McGowan*, 14 Gray, 121; *Sayre* v. *Townsend*, 15 Wend. 647; *Olcott* v. *Bynum*, 17 Wall. 44; *Baker* v. *Vining*, 30 Me. 121.

W. H. Clopton, for the defendant: An unauthorized arrangement by a husband will not deprive the wife of her property. — *Eystra* v. *Capelle*, 61 Mo. 578 ; *Goldsall* v. *Chicago National Bank*, No. — Mo. App. The wife cannot be affected by estoppel. She did not know the deed was made to her husband. — *Acton* v. *Lynch*, 14 Cent. L. J., No. 8; Big. on Estop. 486 ; *Murray* v. *Fox*, 11 Mo. 555 ; *Hall* v. *Callahan*, 66 Mo. 316 ; *Watson* v. *St. Louis Smelting Co.*, 8 Mo. App. 604 ; *Suman* v. *Springate*, 67 Ind. 115. The deeds from Henry Bangert to Benne and from Benne to trustee of wife, were regular on their face. Plaintiff must prove affirmatively that they were fraudulent. — *Gutzweiller* v. *Lackman*, 39 Mo. 91 ; *Forrester* v. *Scoville*, 51 Mo. 268. Fraud will never be presumed where all the facts consist as well with honesty and fair dealing. — *Anus* v. *Gilmore*, 59 Mo. 537 ; *Payne* v. *Stanton*, 50 Mo. 158 ; *Henderson* v. *Henderson*, 55 Mo. 534 ; *Rumbold* v. *Pan*, 51 Mo. 92. Plaintiff bought subject to the equities of the wife and children. He had full notice. — *Major* v. *Bulkley*, 51 Mo. 227. There is no proof that Henry Bangert reduced any of the money or notes belonging or due to his wife into possession. — *Tunnison* v. *Tunnison*, 46 Mo. 77 ; *Carr* v. *Carr*, 1 Md. 453. After 1875 he could not reduce her choses in action into possession without her consent in writing. — Rev. Stats. 560, sect. 3296.

Bakewell, J., delivered the opinion of the court.

This is an action by a creditor of defendant Henry Bangert, to set aside a conveyance of the latter, as being made in fraud of creditors. There is also a count in ejectment. The parties defendant are Henry Bangert and his wife, William Benne, to whom Bangert and wife conveyed the property in question, and Herman Benne, to whom William Benne conveyed the property upon certain trusts. After a general denial, these defendants set up, that Henry Bangert purchased the land with money belonging to his wife and

her children ; that he never had any beneficial interest in the land, and that the deeds to the Bennes were made to carry out and fully declare the trusts upon which Bangert held the land.

The trial court found the deed fraudulent, — that the money with which it was purchased belonged, one-fifth to Henry Bangert, one-fourth to his wife, one-fourth to her son Henry, and three-tenths to her other three children, one-tenth to each.    The court decreed that the title to the land be vested as to one-fifth in plaintiff, and that he is entitled to possession of one-fifth ; as to one-fourth in defendant Charlotte Bangert ; as to one-fourth, in Henry Tieman ; as to one-tenth, in Caroline Tieman ; as to one-tenth, in Fredericka Tieman ; as to one-tenth, in Emmeline Tieman. These Tiemans were children of defendant Charlotte, and were not parties to this action.

Both plaintiff and defendants appeal.

It appears from the evidence that, in March, 1870, defendant Henry Bangert being indebted to his uncle, the plaintiff, for money borrowed of him, together with one Frederick Bangert, executed to plaintiff a promissory note on which plaintiff obtained judgment against defendant Henry, on June 12, 1879, for $1,091.35.   Execution issued on this judgment, was levied upon all the interest of defendant Henry in the land in controversy, and plaintiff became the purchaser at the execution sale.   At the time Henry Bangert executed this note, he had no property.   In the spring of 1873, Henry Bangert married the defendant Charlotte, who was the widow of one Henry Tieman.   Tieman, by his will, left $1,000 to his son Henry Tieman, to be paid to him, with accrued interest, twenty years after the date of the will, which was executed in March, 1872. To his other children he left $400 each, to be paid to them with interest, at their majority.   His farm he left to his wife, to hold for twenty years from the date of the will, then to be divided between her children in fee.   Tieman left four children by his wife Charlotte, all surviving at the date of this suit.   At the time of her marriage to defendant Henry, Char-

lotte Tieman was living with her children on this farm. When defendant Henry married her, he had $80, and no other property. One child was born of this marriage. By the will, Charlotte was charged with the expense of educating and maintaining the children, in consideration of the use of the farm. The records of the probate court show, that Henry Bangert became administrator *de bonis non* of Tieman, and that he reported $2,589 on hand in August, 1875, in cash. In March, 1877, he was ordered to pay legacies to himself as curator of the children of Tieman. Plaintiff testified that he believed that defendant Henry made the money with which he purchased the farm in question out of the farm of his wife, by working on it.

The following deeds to the property in question, which is a farm of fifty acres, were introduced : —

Deed from William Frenz to Henry Bangert, dated January 19, 1876, recorded March 13, 1876; consideration, $1,650.

Deed from Henry Bangert and wife to William Benne, dated April 4, 1879, recorded April 28, 1879; consideration, $2,000.

Deed from William Benne and wife to Herman Benne, dated May 27, 1879, recorded June 5, 1879; consideration, $2,500; *habendum*, in trust for the sole and separate use of Charlotte, wife of Henry Bangert, and her heirs and assigns.

Deed from the sheriff to John Bangert, dated September 24, 1879; consideration, $1.

The witnesses examined were the plaintiff and Benne the trustee, for the plaintiff, and the defendants Henry and Charlotte, on their own behalf. The witnesses seem to be uneducated people; they have kept no accounts or memoranda; they have no certainty as to dates and amounts; and defendant and his wife seem often not to have understood the questions put to them, as the most contradictory statements are made by each of them, and Henry Bangert, especially, answers " yes " and " no " to the same question,

almost in one breath. This makes it difficult to summarize the testimony.

John Bangert, the plaintiff, testified to a conversation with defendant in which defendant admitted that he owed the money, and begged for time ; and to another conversation, after the deed to Benne was executed, in which defendant said that he would not pay ; that he had " made it so " that plaintiff could get nothing at all now ; and to other conversations which seem to have no particular bearing upon the case. Defendant told him that the children's money was loaned out, but the witness cannot say whether this was said before or after the marriage.

William Benne, the trustee, testified that the deed from defendant to him was made without consideration.

Defendant Henry Bangert's testimony is largely made up of answers to questions, many of which he appears not to understand. He says that, when he married Catherine Tieman, there was on the farm about fifteen hundred bushels of corn and twenty tons of hay, twelve head of cattle, four horses, and twenty hogs, and that she had then $1,000 in money. He and his wife both worked on the place since his marriage. To buy the land in controversy, which he calls " the Frenz place," he used about $1,600 of administration money ; some of his wife's money, and some that they made on the place. When he married her, her money was loaned out. She knows how much it was, but he don't. He told John Bangert that he could not give him money, because his wife would object. The money of his wife used in the purchase of the Frenz place was made on the Tieman farm. Fifty-six hundred dollars was paid for the Frenz place. On cross-examination, he said that he saw his wife's money when he married her. Some of it was then loaned out to Penningworth, the former administrator of her husband's estate. Witness could not say where her money was when he married her. She had it. Witness did not see it all. Witness saw some of it in the house.

When it was in the house she had it kept in a drawer. Sometimes witness took it. Never took it from drawer to use it. If witness went to St. Louis and wanted spending money, he could take it, but not without her knowledge. It was under lock and key most of the time. Witness could not always go to the drawer and take it, because his wife claimed it. Witness could have loaned it out with her permission. Part of the money was already loaned to Penningworth when witness was married. Penningworth died in 1874. He paid the money back. He may have paid it to Mrs. Bangert. Witness may have taken it home. He can't say. If they gave him the money, he took it home. They did not have it until after Penningworth died. They did have it when Penningworth died. It was paid back, witness thinks, before he died. Witness believes she got it. She said it belonged to her, and witness had to bring it away, and witness took the money. Could not tell to whom he then loaned it. Could not say whether it was paid back or is still out. They bought land, and used the money for that. Witness believes the money was in the Bremen Bank. Perhaps he took it there. When he did they put it in his name. The money in the house when witness married was paid out for different things as wanted on the farm. Witness could not say whether this cash was all spent within a year of his marriage. Part of the thousand dollars which witness got from his wife was in his possession for a year or two after the marriage, but he don't know what became of it. His wife says that everything belongs to her, and that the farm in controversy belongs to her too. The money to buy it was obtained in different places round. Witness's wife says the money was hers. The money used to buy the farm in controversy was all made on the Tieman farm ; it was none of the administration money. Can't tell when he became administrator. It was when he married. He succeeded Penningworth when the latter died. The money of the estate was all in

cash in the Bremen Bank when witness became administrator. Witness loaned the thousand dollars spoken of before to Caspar Swippe in 1876 or 1877. That was not the children's money, though witness may have stated so at the time. It all belonged to his wife. The note was made in witness's name. Did not put that money into the purchase of the farm, because they had enough without it. Sometimes his wife and he loaned out the money they made by working on the farm, and sometimes they bought land with it. The money was loaned out, and used in living. Sometimes witness put it in the bank in his name. Don't remember where the cash paid for the farm came from. He had to pay it into court. Of the children's money, there is what they have in the land, and $1,100 that Swippe has. The other is invested in the land. The rest of the children's money was put in the Frenz farm; that was when witness got the money. He can't remember when it was paid to him as guardian. At the time witness was dealing with the money belonging to his wife, he was acting for her. It all belonged to her. She always claimed everything to be hers, and if she wanted to give witness anything, she could do so. She never gave him the money he used for buying the land. 'Squire Nacke wrote the deed. Nothing was said between witness and his wife as to whose name the land should be in. Witness took it to himself in the ordinary course of business, the same as if the money was his own.

Mrs. Charlotte Bangert testified that she worked on the farm as a hand. She made $1,000 the year before her marriage to Bangert. She had that when she married Bangert, and also $2,200 in bank belonging to the children. She kept no books and no accounts. Everything is paid every day, by her or her husband. If he goes to town, he gives her the key; and if he wants any money, she lets him have it. She don't know what money was used in buying the farm. Don't know when it was bought. Did not give Bangert the money that belonged to her to buy the farm. Did not know

it was bought till this suit was brought. The farm was bought with her money and that of the children. Except the $1,000 of the children's, the money used in buying the Frenz farm was made on the Tieman farm. The thousand dollars she had when she married, she made on the farm. It was not loaned to Penningworth. Her husband was mistaken as to that. She kept it at home. When they need it, they used it for buying provisions. They bought land with this thousand dollars. Don't remember when. The first land they bought was the Frenz farm. The thousand dollars was at home when the farm was bought. Her husband took the money to town, to pay it there when the farm was bought. The money was never loaned out, and never deposited. It was hid in the cellar in a tin can. Her husband never wanted to get at it. He did not ask, or know, where it was. It was never spent; they always put a little more to it. Such is the testimony.

If the husband, holding the funds of the wife, purchases property with those funds, and takes title in his own name, the law will compel him to convey the property to her. If he make such a conveyance voluntarily, even though he does this to keep his creditors from taking the property in payment of his debts, the conveyance will be sustained, provided there is no question of estoppel, because he must be regarded as having well done what the law would compel him to do at the instance of his wife. *Wilson* v. *Shepherd*, 28 Ala. 623; *Payne* v. *Twyman*, 68 Mo. 339.

Even if the acts of the husband in regard to the property of the wife, could, in any case, operate as an estoppel as to her, there can be no question of estoppel in the present case, for the debt which was subsequently merged in the judgment under which plaintiff claims, was contracted long before defendant Henry Bangert married his co-defendant and acquired any interest in her property.

The statutory provision (Rev. Stats., sect. 3295), as to the rents, issues, and products of the real estate of a married

woman, only restrains the husband from conveying away his interest in the estate and its rents, issues, and profits without her co-operation.　It does not restrain him from collecting and reducing to possession her personal chattels and choses in action.　*Clark* v. *National Bank*, 47 Mo. 17.

Before the passage of the act of March 25, 1875, whose provisions are contained in section 3296 of the Revised Statutes, the husband, by marriage, acquired an absolute right to all the personal property in possession belonging to his wife, and all subsequent acquisitions by his wife of *choses in action* vested absolutely in him, unless made over to her or him for her sole and separate use.　The husband might refuse to reduce such personalty to possession, and the property would then be the property of the wife ; but the doctrine laid down in *Tennison* v. *Tennison* (*supra*), that the husband, in receiving personal property coming to him by the marriage, is presumed in equity to take it as the separate property of the wife, has been overruled by the later cases in this state.　*Woodford* v. *Stephens*, 51 Mo. 443 ; *Kidwell* v. *Kirkpatrick*, 70 Mo. 214.

Any beneficial interest which Henry Bangert acquired in the real estate purchased in his name passed by the execution sale to the plaintiff in this action.　If it clearly appears that the husband has received money or property belonging to the wife under an agreement to appropriate the same for the sole and separate use of the wife in the purchase of lands, and he makes the purchase and takes title in himself, the wife will be held the equitable owner, and the husband her trustee.　*Kidwell* v. *Kirkpatrick*, *supra*.　And we have no doubt that, under the provisions of the Married Woman's Act (Rev. Stats., sect. 3296), if the husband, without the knowledge and consent of the wife, were now to take her personalty and invest it in real estate in his own name, he would be held as her trustee.　In saying this, we waive any question of estoppel ; such questions will perhaps be held to arise as the common-law doctrine

of the relations of husband and wife is more and more modified by statutory enactments, in cases where there would have been no estoppel under the old rule.

If Bangert used any of the money of his step-children in the purchase of this land, to the extent to which he did so, he acquired no beneficial interest in the property, and none passed to the purchaser at sheriff's sale.

The decree in this case, so far as it passes upon the rights and interests of the Tieman children, is of no effect. They were not made parties to the action. Nor does the testimony seem to us sufficiently definite to warrant the findings as to the interests of the defendants in the land.

If the children were brought in as parties defendants, and the case referred to a referee to take an account and ascertain what proportion of the money used in purchasing this land belonged at the time to Henry Bangert, how much to his wife, and how much to the children, a decree might be entered, upon the referee's report, which would ascertain the respective interests of all parties to the land. The conveyances to and from Bangert and Benne being set aside, the title would then be vested by decree in the parties interested, in the proportion of their respective interests as shown by the testimony. Whatever beneficial interest defendant Bangert acquired in the land, passed, of course, to plaintiffs by the sheriff's deed.

It appears by the testimony that the children are all minors, aged, respectively, nineteen, sixteen, thirteen, and eleven years. The defendant, as their curator, shows no authority to invest their money in real estate. What he has bought by a conversion of their money they are equitably entitled to. That he should have bought land with their money may cause difficulty to himself and his sureties in his settlements, but cannot change the fact that he can have no beneficial interest in the land acquired by him by an admitted conversion of trust-funds. The transaction, so far as this

portion of the money was concerned, was probably made in simple good faith, and with no intention of doing a wrong, but that does not change its legal aspect.

The judgment will be reversed and the cause remanded. All the judges concur.