Burns v. Bangert.

BURNS *et al.* v. BANGERT *et al.*, *Appellants.*

92 167
97 136
92 167
38a 604
92 167
44a 468
92 167
115 17

92 167
e169 e370

92 167
175 3287

1. **Husband and Wife:** "REAL ESTATE:" STATUTE. Where, by the terms of her husband's will, the widow was to have the use, possession, and control of a farm for twenty years, in consideration of which she was to rear and educate the children of the marriage, and at the expiration of the term she was to have absolutely one-fifth part of the farm, her interest was real estate within the meaning of Revised Statutes, section 3295, and as that term is used in various other statutory provisions of this state.

2. ———: JOINT ACCUMULATIONS ON WIFE'S LAND: REVISED STATUTES, SECTION 3295. Money derived or accumulated upon her subsequent marriage, in whole or in part by the management and cultivation of the farm, and by the joint labor of the husband, wife, and her minor children thereon, was, during coverture, exempt, under Revised Statutes, section 3295, from attachment or levy of execution for the sole debts of said second husband, and where such money was invested in other real estate, the latter took the place of the money and was held under like exemption.

3. ———: ———: ———. The restrictions contained in the statute, which is a disabling one, are on the creditors of the husband as well as on the husband.

4. ———: ———: ———. Whether the possession be considered as in the husband or wife is immaterial, as neither the property itself, nor his marital interest therein, is subject to levy or seizure at the instance of the husband's creditors.

5. **Fraudulent Conveyance:** EXEMPT PROPERTY. The property being exempt from execution for the sole debts of the husband, it cannot, as to his creditors, be the subject of a fraudulent conveyance or sale by the husband.

6. ———: ———. Creditors can complain only of the fraudulent conveyances of property which is subject to their debts.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*W. H. Clopton* for appellants.

(1) Plaintiffs having bought the land, pending the

litigation, cannot maintain this suit. They are purchasers of a mere litigation right. Bispham's Eq., sec. 166; 2 Story's Eq. 1040; *DeHoughton v. Money Law*, 2 Chan. Ap. 160; *Smith v. Harris*, 43 Mo. 557; *Wallen v. Railroad*, 74 Mo. 522; *Railroad v. Railroad*, 20 Wis. 183; *Prosser v. Edmonds*, 1 Younge and Coll. 481, 499; *French v. Shotwell*, 5 Johns. Ch. 566; *McMahon v. Allen*, 34 Barb. 56; *Gardner v. Adams*, 12 Wend. 297; *Marshall v. Means*, 12 Ga. 61; *Wilhite v. Roberts*, 4 Dana, 172. (2) The children of Henry Tieman should have been joined as parties defendant. It was the duty of the court to have them brought in. *Butler v. Lawson*, 72 Mo. 246; *Hayden v. Marmaduke*, 19 Mo. 403. Henry Bangert qualified as curator of the children and allowed part of their money to remain in the land. To that extent they were his creditors, and he had a right to protect them by making the deed to his wife's trustee. 3 Will. on Ex. 1947; *Putlig v. Stace*, 4 Ves. 622; *Crosskill v. Bower*, 32 Beav. 86; *Norris Appeal*, 71 Pa. St. 106, 125. (3) The property having been conveyed, before judgment had against Henry Bangert, to his wife's trustee, for a valuable and sufficient consideration, passed the legal title to her trustee, and she is entitled to hold it as against her creditors, who did not contract on the faith of his being the *bona fide* owner of the property. (*a*) The money belonging to the wife used in the purchase of the property was "rents, issues, and products" of her real estate. R. S., sec. 3295; *Hall v. Cole*, 40 Mo. 181, 184; *Abernathy v. Whitehead*, 69 Mo. 28; *Fisk v. Wright*, 47 Mo. 351; *Mueller v. Kaessman*, 84 Mo. 324; *Kirkwell v. Kirkpatrick*, 70 Mo. 214; *Allen v. Cowen*, 23 N. Y. 505; *Williams v. McGrode*, 13 Minn. 42; *Hanson v. Fidelet*, 55 Me. 189; *Feller v. Alden*, 23 Wis. 304; *Dean v. Bailey*, 50 Ill. 484. (*b*) The fund belonging to the wife must be treated *quasi* as her separate estate. Therefore, land purchased with such fund by the husband belonged to her whether

the deed was taken in her name or his. *Martin v. Colburn*, 88 Mo. 229; *Payne v. Twyman*, 68 Mo. 339. (*c*) The plaintiffs' grantor bought at sheriff's sale, with full knowledge of the sources from which the money came with which the farm was bought, and that the deeds from Henry Bangert to Benne, and from Benne to the trustee of Charlotte Bangert, were made and recorded. (*d*) The products of the labor of the husband on the land of the wife, exempt from execution, belong to the wife. *Knapp v. Smith*, 27 N. Y. 280; *Feller v. Alden*, 23 Wis. 205; *Buckley v. Wells*, 33 N. Y. 520; *Gage v. Douchy*, 34 N. Y. 297; *McIntire v. Knowlton*, 6 Allen, 566; *Dean v. Barly*, 50 Ill. 484. (5) The judgment is irregular, in that it is, in part, against a married woman *in personam*. *Caldwell v. Stephens*, 57 Mo. 589. The judgment on the ejectment count being void, as to the married woman, on appeal, will be declared void as to all. *Holton v. Towner*, 81 Mo. 366; *Corrigan v. Bell*, 73 Mo. 57. (6) The judgment against Henry Bangert is manifestly wrong. He is not in possession and there is no proof that he is or was. The property is held by his wife as separate estate. Possession in a defendant in ejectment is one of the facts which must be alleged and proved. *Clark v. Stanchfield*, 57 Mo. 575.

*Franklin Ferriss* and *Gist Blair* for respondents.

(1) This suit was properly revived in the names of present plaintiffs and respondents. *Bobb v. Woodward*, 50 Mo. 101; *Zoll v. Soper*, 75 Mo. 462; *Lionberger v. Baker*, 14 Mo. App. 353; s. c., 88 Mo. 447. (2) The deeds sought to be set aside were made without consideration. Henry Bangert, the grantor, was about to be sued by plaintiff for over a thousand dollars, and this conveyance left him with no other property subject to execution. This is practically conceded by defendants. The presumption of fraudulent intent follows. Bump on Fraud. Con. 281; *Polter v. McDowell*, 31 Mo.

62. The deed to his wife was void as to his creditors, being made without consideration. (3) Evidence to create a resulting trust in the face of an absolute deed and long-continued acts of ownership must be of the strongest and most unequivocal character. *Ringo v. Richardson*, 53 Mo. 385 ; *Kennedy v. Kennedy*, 57 Mo. 73 ; *Thomas v. Chicago*, 55 Ill. 403. (4) (a) Henry Bangert, when he married his wife, acquired an absolute ownership of all the personal property in possession belonging to his wife at the time of marriage, or which came to her afterwards, she having no separate estate. *Woodford v. Stephens*, 51 Mo. 447 ; *Terry v. Wilson*, 63 Mo. 499 ; *Kidwell v. Kirkpatrick*, 70 Mo. 214 ; *Hammons v Renfrow*, 84 Mo. 342. (b) Her possession was his possession. Bishop Married Women [1 Ed.] secs. 52, 53, 64 ; *Walker v. Walker*, 25 Mo. 367 ; *Terry v. Wilson*, *supra.* (c) This rule applies to money derived from the sale of the products of the farm left to Charlotte Bangert by her former husband. *Clark v. National Bank*, 47 Mo. 17 ; *Bledsoe v. Simms*, 53 Mo. 308 ; *Dillenberg v. Wrisberg*, 10 Mo. App. 465. (5) The alleged rights of the children do not stand in the way of the decree because, first, they are not parties to the suit and cannot be affected by the judgment ; and second, the evidence is perfectly convincing that their money was not used in the purchase of the land. (6) The judgment of the court of appeals, as entered of record, is against Bangert and wife for possession, and against Bangert for rents and profits, and is, therefore, right.

RAY, J.—This cause has twice been in the St. Louis court of appeals, and is reported in *Bangert v. Bangert*, 13 Mo. App. 144, and *Burns v. Bangert*, 16 Mo. App. 22.

In 1872, one Tieman was the owner of a valuable and productive farm, designated, in the evidence, as the Columbia bottom farm, upon which he resided at the

date of his death in said year. He left as his widow, Wilhelmine Charlotte Tieman, usually spoken of as Charlotte, and four minor children. The widow con-. tinued, with the said children, to reside upon the said farm after his death, and held the same under the provision of Tieman's will, which will be noticed hereafter.

In the first year after the death of Tieman, the widow saved, from the products of the farm, the sum of one thousand dollars. Some gathered crops which the husband left on said farm and which she sold, entered into this sum. Whilst residing on this farm, in the year 1873, and one year and some months after the death of Tieman, her first husband, said Charlotte Tieman intermarried with the defendant, Henry Bangert, who, immediately after the marriage, became administrator, *de bonis non*, of her first husband's estate, and as such received into his hands about twenty-five hundred dollars. He also became curator for each of said four minor children. He was possessed of no means at the date of the marriage. For three years thereafter he lived with his said wife upon the Columbia bottom farm, and they, with the minor children, cultivated it together, the wife and children laboring in the fields as well as said husband, and doing the cooking and the household work of all descriptions. Said Henry Bangert had no other occupation, or business, or means of making money, except such as were afforded by the said farm, so held by the wife. Upon this he bestowed his time and labor, as we have said.

In 1876 said Henry Bangert bought a farm, near the Columbia farm, held by his wife under Tieman's will, paying therefor fifty-six hundred and fifty dollars, in cash, and took a deed of general warranty therefor in his own name. The grantor in said deed to Henry Bangert was one Frenz, and this farm is spoken of as the Frenz farm. In April, 1879, Bangert conveyed the Frenz farm to William Benne, who, in May, 1879,

conveyed it in trust to Henry Benne for the separate use of said Charlotte, wife of, said Henry Bangert. These intermediate deeds were without consideration.

In May, 1879, John Bangert, the uncle of defendant Henry, held the latter's note for one thousand dollars, upon which he instituted suit, and obtained judgment, by default, thereon in June, 1879. This note was the sole obligation and debt of the husband, and was given prior to his said marriage with the widow of Tieman. John Bangert levied execution, under his said judgment, on the said Frenz farm, and at the sheriff's sale became the purchaser thereof for one dollar. He thereupon instituted this suit against Henry Bangert, wife, *et al.*, the first count of the petition being in the nature of a bill in equity, to set aside, as fraudulent, said conveyances made by the husband through a third party to a trustee, to hold for the separate use of the wife. The second count was one in ejectment for the possession of said farm.

Said John Bangert and wife, after the institution of this suit, conveyed the Frenz farm, by deed of quit-claim, to said plaintiffs, Burns & Metcalfe, for six hundred dollars, and said John Bangert also assigned to them the judgment obtained by him against said Henry Bangert, and after the death of said John Bangert, said Burns and Metcalfe were substituted on the record, and the suit revived in their name.

The answer of the defendants, so far as we care to consider the same, alleges, in substance, that said Henry Bangert, acting as the agent of said Charlotte Bangert, the wife, and as curator of said minor children, purchased the said Frenz farm, and that, of the purchase money paid therefor, sixteen hundred dollars belonged to the minor children jointly, and the remaining four thousand dollars belonged to defendant, Charlotte Bangert, being the rents, issues, and products of the real estate devised to her by her first husband.

The only evidence adduced at the trial as to the acquisition of this purchase money, what it was, and whence derived, was given by the defendant, Charlotte Bangert, who was put upon the stand by the plaintiffs. Her testimony is given in the opinion in 16 Mo. App. 33, 34, 35, and we need not again recite it. In this said opinion the court of appeals say: "If we give full effect to this testimony (meaning that of the wife), it will appear that, of the fifty-six hundred and fifty dollars, which appears to have been the purchase price of the Frenz farm, twenty-six hundred and fifty dollars were given by Mrs. Bangert to Henry Bangert, out of moneys which she had kept in the house, the same being accumulations of sales of produce of the Columbia bottom farm, on which her former husband died, and on which she has ever since lived, both before and after her marriage with her present husband, Henry Bangert. It will also appear that, of this twenty-six hundred and fifty dollars, one thousand dollars was the result of accumulations by Mrs Bangert from sales of produce of the farm, during her widowhood, and that the remaining sixteen hundred and fifty dollars was money which had accumulated from sales of produce of the same farm during the period of about three years which intervened between her marriage with Henry Bangert and the purchase of the Frenz farm. Whether it can be inferred, from this testimony, that any money of Henry Bangert went into the purchase of the Frenz farm, depends upon the question, who was the legal owner of this sixteen hundred and fifty dollars? There is no evidence of any separate ownership of this money by Mrs. Bangert, other than the fact that she always had it in her personal custody at the house, and that it was the proceeds of a farm in which an estate for twenty years had been vested in her by her former husband."

After some discussion of several opinions of this court (*Woodford v. Stephens*, 51 Mo. 443, 447; *Kidwell v.*

*Kirkpatrick*, 70 Mo. 214; and *Walker v. Walker*, 25 Mo. 367, 375), the court of appeals then say: " Applying these principles to the facts of this case, the conclusion is unavoidable that all of that portion of the money which was used by Henry Bangert in the purchase of this farm, amounting to the sum of four thousand dollars, which the defendants claim in their answer was the money of Mrs. Bangert, is to be deemed to have been the money of the defendant Bangert. When he married the widow Tieman, and went to live with her on the Columbia bottom farm, he is deemed, in law, to have entered into possession of her estate for years in the farm under the deceased husband's will, which was a chattel interest, and also of all chattels upon the farm belonging to her. There is no evidence whatever of any agreement, at that time, or of any purpose on his part to hold these chattel interests as her trustee, or in any other than his own right as her husband, under the law as it then stood. The one thousand dollars which she claims to have owned, became his, "*jure mariti*," under the decision above quoted from the twenty-fifth Missouri. Although it may not have been taken into physical custody, though Mrs. Bangert may have kept it in the cellar in an oyster can, as she testified at the former trial, yet, as he had a right to reduce it into his possession at will, that was enough. He and she were one in law, and her possession was his possession."

It will be observed that the court of appeals took the evidence and dealt with it as chancellors, and reversed the ruling of the circuit court, dismissing the bill, and disposed of the case by a decree in favor of plaintiffs, which concluded the rights of Mrs. Bangert, the wife, but did not affect the rights of the minor children, who had not been made parties to the suit. The decree against Henry Bangert and wife was also for the annual rental value of the Frenz farm. This said disposal thereof, so far as Mrs. Bangert was concerned,

was upon the theory, as the above extracts from the opinion show, that the money thus produced and earned by the joint and common labor of husband and wife and minor children, on the said farm, held by the wife, under the will of the first husband, and that already accumulated by the widow, prior to the marriage with the second husband, and held by her as stated, was money, which, under the law, as it then was, belonged to the husband, in virtue of his marital rights, and, as such, was liable to execution for his sole debts.

In this disposition of the case, we are not able to concur. The third provision of the will of said Tieman, which we have referred to, was as follows : "Third. I give and devise all of my real estate, situate in the county of St. Louis, to my beloved wife, Wilhelmine Charlotte Tieman, to be held for a period which shall extend to twenty years from the date of this will, and at the end of that period, I will and order· that the said real estate be distributed equally among my wife, Wilhelmine Charlotte Tieman, and my children, Caroline Tieman, Fredericka Tieman, Amaliegen Tieman, and Henry Tieman, to have and to hold to my said wife, Wilhelmine Charlotte Tieman, and my said children, Caroline, Fredericka, Amaliegen, and Henry Tieman, and their heirs and assigns forever. * * * It is provided, also, that the expense of rearing and educating my children shall be paid by my wife, Wilhelmine Charlotte Tieman, in consideration of the use of the entire farm during the minority of my children."

It will be perceived that, at the expiration of the twenty years, the wife was to have absolutely the one-fifth portion of said real estate, sharing equally with each of the children, and during the period of twenty years, she was to have the use, possession, and absolute control thereof, in consideration of which she was to rear and educate the children. Without entering at length upon a discussion as to its exact character, the in-

terest of the wife in said lands, as given by the said will, was, we think, "real estate," within the meaning of section 3295, Revised Statutes, and as that term is used in various other statutes in this state. She could, unquestionably, have maintained the action of ejectment therefor, if she had been ousted of the possession.

As already said, there is no pretense that said Henry Bangert had any money of his own, or that the said four thousand dollars, used in the purchase of the Frenz farm, was derived or accumulated, in whole or in part, in any other way than by the management and cultivation of the Columbia bottom farm, devised as aforesaid, and by the joint labor of the husband and wife, and minor children, upon the said farm, during the three years after the marriage, and from 1873 to 1876. If this is so, then the purchase money of the Frenz farm was so far, rents, issues, and products, of the Columbia bottom farm, acquired by the wife under the will, and as such was, during coverture, exempt from attachment or levy of execution for the sole debts of the husband. The Frenz farm, bought therewith, took its place, and was held under like exemption. The statute declares that, not only the rents, issues, and products of the real estate of a married woman shall be exempt, during coverture, from attachment or levy of execution, but that all money and obligations arising from the sale of such real estate, and the interest of her husband, in her right, in any real estate, belonging to her before marriage, or which she may have acquired by gift, grant, devise, or inheritance, shall be likewise exempt. With respect to such lands, and money, and obligations arising from the sale thereof, and rents, issues, and products of such lands, the marital status and rights of the husband, as they existed at common law, have been changed by said statute. The statute is a disabling statute, and prevents the husband from conveying the wife's real estate and her interests therein, and the products thereof, and it

Burns v. Bangert.

also exempts the rents, issues, and products, and the money and obligations arising from the sale thereof, and the marital interest of the husband therein, during coverture, from attachment and execution for the husband's sole debts. Its restrictions are on the creditors of the husband, as well as the husband. Whether the possession be considered as in the husband or wife is immaterial, as neither the property itself, nor his marital interest therein, is subject to levy or seizure at the instance of the husband's creditors.

If this property is exempt from execution for the sole debt of the husband, it cannot, as to his creditors, be the subject of a fraudulent conveyance, or sale by the husband. If his creditors cannot reach it for his debt, its sale or conveyance is no concern of the creditors, since they have no right or claim thereon. They can only complain of sales and conveyances of property that is subject to their debts. To this extent the creditors have no standing in court. Bump on Fraud Con., [2 Ed.] p. 242, and cas. cit.; *Davis v. Land*, 88 Mo. 436; *Hartzler v. Tootle*, 85 Mo. 23; *Abernathy v. Whitehead*, 69 Mo. 30; *Vogle v. Montgomery*, 54 Mo. 584.

Since the decision of this cause by the court of appeals, this court has had occasion in *Mueller v. Kaessmann*, 84 Mo. 318, to consider the force and effect of this section, 3295, upon the marital rights of the husband, as they existed at common law. The subject matter of the litigations in that case was lands of the wife, held in the ordinary way, and not to her separate use, but this case involves kindred and analogous questions, arising under said statute, and falls, we think, within the principles of that decision and construction of said statute, as therein announced.

For these reasons, the judgment and decree of the court of appeals herein is reversed, and that of the circuit court is affirmed, in which all concur.